## MARY E. BUTZ, ADMINISTRATRIX,
### v.
## JACOB SCHWARTZ.

*Negotiable Instruments—Promissory Note—Action by Administratrix of
Indorsee—Fraud and Circumvention in Procuring Signature—Evidence
—Instructions.*

1.   In an action on a promissory note by the administratrix of the in-
dorsee, he having died after suit brought, where the defense relied on
was fraud and circumvention on the part of agents of the payee in pro-
curing the signature to the note, the maker of the note was a competent
witness under Sec. 2, Chap 51, R. S., 3d exception, as to conversa-
tions or transactions with him testified to by said agents at plaintiff's
instance, said agents having a direct interest in the result of the suit.

2.   If payee's agents did not have a direct interest in the result of the
suit, then defendant was a competent witness as to conversations or ad-
missions by him testified to by these agents at plaintiff's instance, under
the 4th exception.   Under this exception all that was said and done on
the occasion testified to, the *res gestæ*, was admissible.

3.   In an instruction to the jury, the omission of the qualification that
false testimony must be with regard to a material matter in issue in order
to justify the jury in disregarding the whole testimony of a witness whose
testimony is false in part, does not constitute reversible error, where it is
apparent that all the supposed false testimony to which the instruction
referred was upon material points.   Minor exceptions to instructions over-
ruled.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Messrs. WILLIAM McFADON and EMMONS & WELLS, for appellant.

Messrs. CARTER, GOVERT & PAPE, for appellee.

WALL, J.  For a statement of the controversy involved in this case, reference may be had to 15 Ill. App. 114.  After the case was remanded, the original plaintiff died and the present appellant having been appointed administratrix of his personal estate became plaintiff in his stead.  Three trials have since occurred, in one of which the jury were unable to agree, and in the other two verdicts were for the defendant. From the judgment on the last verdict the present appeal is prosecuted.

In the printed argument counsel for appellant say that the principal complaint they have to make is that the court erred in allowing the defendant to testify on his own motion and in his own behalf to conversations had by him with the agents of the payees of the note at the time it was executed, and to the action of the court in giving instructions for the defendant.

The defendant was of course incompetent to so testify as to any matters occurring before the death of the plaintiff's intestate, unless within one or more of the exceptions to Sec. 2, Ch. 51, R. S., relating to evidence.  It appears that the persons with whom the conversations occurred, David W. Jennings and Marion Hughes, the agents of the payees of the note, were present at the time of its alleged execution, and had more or less to do with the transaction out of which this suit arose.

By the pleadings two questions of fact become prominent and controlling:  1st, did defendant sign the note.  2d, if so, was his signature procured by fraud and circumvention.

These witnesses, Jennings and Hughes, testified that they

were present and saw defendant sign the note, that it was read over to him by F. C. Jennings, and that it was given in completion of the contract; that the consideration of the note was a quantity of lightning rods which defendant purchased, and that a credit of $8.02, which appears on the back of the note, was on account of a board bill of the defendant against these witnesses and F. C. Jennings, who was also an agent of the payees of the note. A part of this evidence was read in rebuttal, but it was all contained in the depositions of these witnesses taken on behalf of the plaintiff.

If the note was obtained by fraud and circumvention, it seems quite clear these agents would be responsible to their principals for any loss or damage caused them by such an illegal transaction, and that they had a direct pecuniary interest in supporting the note, to avoid such responsibility, as well as to insist upon the payment of their bill to the defendant by means of the credit indorsed on the note. If they had a direct interest in the event of the suit, then defendant was competent to testify, under the third exception, to the conversations or transactions testified to by them. We think he was competent under that exception. Again, by the fourth exception it is provided that where any witness not a party 'to the record or not a party in interest or not an agent shall testify, at the instance of any party to the action, to any conversation or admission of any adverse party, occurring before the death of and in the absence of any such deceased person, such adverse party may testify as to the same admission or conversation.

If it could be held that the witnesses Jennings and Hughes were not interested in the result of the suit, then defendant was competent to testify to any admission or conversation testified to by them. It is urged, however, by appellant, that defendant under this exception was limited strictly to the *conversation* or *admissions* testified to by those witnesses, and that except as far as their evidence was read in rebuttal, they testified to a *transaction* merely, to wit, the mere signing of the note after the same was read over to defendant, and that in so doing they were not testifying to a *conversation* or *admission* as to which *only* could defendant testify.

The object of the second section of the act referred to, was to so limit the operation of the first section as to place parties upon an equal footing and not to allow the estate of a deceased person or of a person under the disabilities mentioned to be subjected to a disadvantage not possible if it were not for such death or disability, and the courts have always endeavored to construe the statute according to its spirit and not merely according to its letter.    Whitmer v. Rucker, 71 Ill. 410.

It is the settled rule that where a conversation is testified to, the whole of it may be brought out, and very often this will involve what was done in the same transaction of which the conversation was part and parcel. In this instance it would be difficult to separate the matters testified to in the part of the deposition which was read in chief, from those testified to in the part of the same deposition read in rebuttal, and it would be quite as difficult to separate the mere language used by the parties from what they were then doing on that occasion.    Hughes and Jennings say the note was read over to the defendant and he then signed it.    He says it was not so read to him, but was represented to be for the purpose of inducing and procuring the payees of the note to constitute his son Daniel an agent to sell the rods, which were then left there, upon certain terms which he states, as to the commissions, etc.    The version of the conversation given by defendant naturally involves all that was said by both sides as well as what they did at the time, and so of the version given by Hughes and Jennings.    Any fair construction of the exception in question must necessarily admit the entire conversation, and as necessarily, whatever was done on the occasion—the whole *res gestæ*.    Therefore it follows that whether Hughes and Jennings were or were not directly interested in the event of the suit, the defendant was competent as to the same matters to which they testified and there was no error in this ruling of the court.

It is urged the court erred in admitting the "yellow papers" offered by defendant.    They were blank orders or contracts, to be used when contracts were made to erect rods on buildings, and were left with defendant by the agents of

the payees as a part of the transaction. There was no error in this respect. The appellant urges also that it was error to refuse the 14th and 15th instructions asked by appellant. All that was competent or proper in the 14th was contained in others given.

The 15th was wholly unnecessary and there was no error in refusing it.

As to the instructions given for appellee it is urged that the 11th, 14th and 15th are bad because they omit the qualification that the false testimony must be with regard to a material matter in issue, in order to justify the jury in disregarding the whole evidence of a witness whose testimony is false in part. On examining the evidence, however, it is not perceived how this omission in these three instructions could have prejudiced the appellant, for it is apparent that all the supposed false testimony to which the instructions would be understood to refer, was upon material points. When this is so the error will not vitiate even in capital cases where life is at stake. Dacey v. The People, 116 Ill. 555. But a careful reading of the instructions will disclose that they are really not faulty in the respect urged, and when fairly considered they authorize the rejection of the testimony of a witness only to the extent it is found to be mistaken or untrue. As to the 15th, there is some ambiguity in the latter clause, and possibly it might be interpreted by a jury as counsel suggest, were it not for the 16th immediately following, in which the rule permitting the rejection of the entire testimony of a witness because false in part is fully and correctly given. The instructions when considered as a series are substantially good.

No other objections are pressed in the brief of appellant. The judgment will be affirmed.

*Judgment affirmed.*